OSCN Found Document:ZOU v. STATE

 

 
 ZOU v. STATE2026 OK CR 1Case Number: F-2024-639Decided: 01/15/2026Mandate Issued: 01/15/2026THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA
Cite as: 2026 OK CR 1, __ P.3d __

 

WANG ZOU, Appellant,
v.
THE STATE OF OKLAHOMA, Appellee.

SUMMARY OPINION

LUMPKIN, PRESIDING JUDGE:

¶1 Appellant, Wang Zou, was tried by the Court and convicted in the District Court of Craig County, Case No. CF-2022-91 of: Count 1, Cultivation of a Controlled Substance, in violation of 63 O.S.2021, § 2-50963 O.S.2021, § 2-41568 O.S.2021, § 450.863 O.S.2021, § 2-404

¶2 From this judgment and sentence, Appellant appeals and raises the following propositions of error:

I. THE TRIAL COURT ERRED IN INTERPRETING THE STATUTE ALLOWING "OTHER PENALTIES" FOR VIOLATIONS AS A BASIS TO INSTIGATE A CRIMINAL PROSECUTION WHEN THE INTENDED APPLICATION OF THIS STATUTE IS FOR SEPARATE AND UNRELATED CRIMINAL CONDUCT, NOT FOR A FAILURE TO COMPLY WITH REQUIREMENTS RELATING TO THE GROWING OF MARIJUANA.

II. THE TRIAL COURT ERRED IN FAILING TO PROPERLY CONSIDER THE AMBIGUITY OF THE LAWS AT THE TIME THE ALLEGED OFFENSE TOOK PLACE, WHICH FURTHER DEMONSTRATES THE LACK OF CRIMINAL INTENT. THE RULE OF LENITY APPLIES RENDERING THE STATUTE UNCONSTITUTIONAL.

III. THE TRIAL COURT ERRED BY APPLYING A STRICT ADHERENCE STANDARD THAT IS NOT SUPPORTED BY LAW AND WHICH IS CONTRARY TO THE SPIRIT OF THE LEGISLATION AS SET FORTH BY THE PEOPLE OF THE STATE OF OKLAHOMA IN LEGALIZING MEDICAL MARIJUANA.

IV. THE TRIAL COURT ERRED IN ASSERTING CRIMINAL JURISDICTION OVER THE DEFENDANTS [SIC] WHEN OKLAHOMA'S MEDICAL MARIJUANA STATUTES PROVIDE A SPECIFIC REGULATORY FRAMEWORK AND MANDATE ADMINISTRATIVE SANCTIONS FOR LICENSE VIOLATIONS BY THE OKLAHOMA MEDICAL MARIJUANA AUTHORITY (OMMA).

V. THE TRIAL COURT ERRED BY FINDING THAT THE DEFENDANTS [SIC] HAD CRIMINAL INTENT DUE TO A LACK OF COMPLIANCE.

VI. THE TRIAL COURT ERRED IN ASSERTING CRIMINAL JURISDICTION BEFORE THE STATE EXHAUSTED ITS ADMINISTRATIVE REMEDIES BY FAILING TO SUSPEND OR REVOKE THE DEFENDANTS [SIC] VALIDLY ISSUED MEDICAL MARIJUANA LICENSES.

VII. THE TRIAL COURT ERRED BY APPLYING AN UNCLEAR AND UNDEFINED STANDARD OF COMPLIANCE UNDER OKLAHOMA'S MEDICAL MARIJUANA STATUTES AND FAILED TO ESTABLISH WHAT STANDARD OR THRESHOLD OF COMPLIANCE WAS NECESSARY FOR A LICENSEE TO OPERATE LAWFULLY, LEADING TO AN IMPROPER AND UNLAWFUL CONVICTION.

VIII. THE TRIAL COURT ERRED BY APPLYING A STRICT ADHERENCE STANDARD THAT IS NOT SUPPORTED BY LAW AND WHICH IS CONTRARY TO THE SPIRIT OF THE LEGISLATION AS SET FORTH BY THE PEOPLE OF THE STATE OF OKLAHOMA IN LEGALIZING MEDICAL MARIJUANA.

¶3 After thorough consideration of these propositions and the entire record before us on appeal including the original record, transcripts, and briefs of the parties, we have determined that under the law and the evidence, Appellant is not entitled to relief.

STATEMENT OF FACTS

¶4 This case concerns an illegal marijuana grow operation located in Craig County. In April 2022, Oklahoma Bureau of Narcotics (OBN) Agent Daniel Peterson began an investigation into a marijuana grow in Big Cabin. OBN became aware of numerous issues involving marijuana grow operations which utilized the services of a Mustang attorney, Matt Stacy, to become licensed in Oklahoma to legally grow medical marijuana. The instant case involves one of those.

¶5 Peterson testified as follows regarding the initial phase of his investigation: he learned a woman named Helen Corrello was named as a seventy-five percent owner in sixty-four marijuana grow operations, including the subject one, Zou Green LLC, and someone named Ming Fang Zou was named as a twenty-five percent owner of the subject grow; Corrello stated she was not an owner of the Zou Green LLC operation in Craig County; the US Department of Homeland Security intercepted a FEDX package addressed to "Jackie Colt" at the Zou Green LLC address containing three kilograms of ketamine; there was no resident of that name in Craig County; and the OBN registration for Zou Green LLC expired on October 31, 2021, although it had a current license from the Oklahoma Medical Marijuana Authority (OMMA).

¶6 After learning of the above occurrences, Peterson commenced an in-depth investigation into Zou Green LLC, the named holder of the OMMA license. The agent testified that in order for a marijuana grow to legally cultivate and produce medical marijuana, there are several requirements. These include: the seventy-five percent owner must be an Oklahoma resident; the entity must obtain a license from the OMMA; the entity must obtain a registration number from the OBN; the entity must have both an OMMA license AND an OBN registration number in order to legally cultivate marijuana; each of these requirements has its own expiration date; the entity must submit monthly reports identifying its existing plants, indicating what plants had been harvested, sold or otherwise disposed of; and in 2022, OMMA required grows to use a tracking system, METRC, to track the marijuana plants "from seed to sale."

¶7 When Peterson looked at the reports from Zou Green LLC, he discovered they did not comply with the OMMA/METRC reporting requirements. They did not show any plants were harvested or drying. One of the sending email addresses belonged to Appellant. Additionally, the number of plants shown on the reports differed from earlier pre-METRC reports and there was no explanation of what happened to the plants. Also of concern for Peterson was the fact that the IP addresses shown on the reports for the person reporting were not located in Craig County. The addresses were outside the United States, as well as Dallas, Arlington, Kansas City, Oklahoma City, and Midwest City.

¶8 Another OBN agent, Shawn Manning, flew a drone over the Zou Green LLC location in Craig County. The drone footage showed some hoop houses and a residence, as well as some outdoor marijuana plants. Notably, the area was not fenced with the OMMA required eight-foot fence, nor were there any required self-closing and locking doors. After seeing the property condition and knowing Corrello had no idea her name was on documents pertaining to this grow, Peterson obtained a search warrant for the grow premises.

¶9 The search revealed the following: the co-defendant (Appellant's father) answered the residence door; the room to the left of the front door contained marijuana plants hanging to dry; they had no METRC tags or tax stamps on them; the den contained marijuana seedlings; the living area contained marijuana growing chemicals; one room contained two hundred eighty-eight plants and grow lights; items of dominion and control for the co-defendant, Ming Fang Zou, Matt Stacy and Appellant were also found in the house, including a Transporter License in Appellant's name; there were marijuana plants growing in an addition to the back of the house; none of the doors were self-closing and locking; marijuana was growing between the hoop houses, as well as inside them; the hoop houses did not have the required doors; the residence cellar contained eight hundred eighty-five pounds of marijuana packaged in approximately one pound heat sealed packages; none of the packages bore the required stamps or tags; there was a water bill showing the grow address and addressed to Appellant and the co-defendant; there was a deed to the property showing the co-defendant as one of the owners; the co-defendant's social security card was found; flight documents and a boarding pass bearing Appellant's name were found, a voter registration card bearing his name and the grow address and a Pike Pass receipt bearing Appellant's name were all found inside the residence.

¶10 Peterson testified the grow did not comply with the OMMA and OBN licensing requirements for legally growing and producing marijuana, nor did it comply with the OMMA requirements regarding doors, tagging plants, fencing, or tax stamps. He further opined that the packaged marijuana found in the basement could have been slated for sale on the black market because of its packaging and lack of tagging and stamping. Such marijuana generally sells for about $700.00 to $800.00 per pound.

I.

¶11 In his first proposition, Appellant contends the trial court erred in determining that Oklahoma's drug laws allowed the State to prosecute him criminally for violating certain of those provisions. He argues Zou Green LLC's OMMA license precludes criminal prosecution of him for violations of our drug laws and only allows imposition of civil penalties as contained in the statutes creating and regulating the OMMA. This issue involves statutory construction which we review de novo. See State v. Rutledge, 2022 OK CR 8509 P.3d 625Leftwich v. State, 2015 OK CR 5350 P.3d 149Id.

¶12 Cultivation, production, and sale of marijuana for medical purposes is legal in Oklahoma under certain conditions. See 63 O.S.2021, § 42263 O.S.2021, § 2-204See 63 O.S.2021, § 2-509

¶13 In order to lawfully cultivate medical marijuana, the grower applicant must obtain a license from the OMMA pursuant to 63 O.S.2021, § 427.1463 O.S.2021, § 2-30263 O.S.2021, § 427.663 O.S.2021, § 2-409

¶14 Marijuana growers must also provide detailed reports to the State Department of Health pursuant to 63 O.S.2021, § 422

¶15 Against this statutory backdrop, we now review the evidence adduced at trial. First and foremost, the evidence showed that Zou Green LLC's OBN registration expired October 31, 2021, thus it was not licensed to cultivate marijuana at the time of the OBN investigation in June 2022. Next, Helen Corrello never agreed to be a seventy-five percent owner of Zou Green LLC and knew nothing about it, making fraudulent her identification on the OMMA license application as the seventy-five percent owner of Zou Green LLC. The State admitted copious amounts of evidence showing Zou Green LLC's failure to even minimally comply with all reporting, tagging and security requirements for OMMA license holders, namely: no fencing; no proper door locks; no METRC tags on growing marijuana plants; no METRC tags on harvested plants; no lab testing on the marijuana; insufficient reporting; eight hundred eighty-five pounds of one pound heat sealed packages of marijuana found in the basement of the house on the property, untagged and unstamped; and no secure lockup for the finished product.

¶16 The statutes dictating the requirements to obtain and maintain a license to cultivate and produce medical marijuana are meant to be followed in order to allow lawful cultivation of an otherwise illegal substance. Review of the statutes shows it is clear that in order to legally grow marijuana in Oklahoma, the grower must have a valid OMMA license which includes a current OBN registration. In this case, the evidence demonstrates neither Zou Green LLC nor Appellant had a valid OMMA grower's license in 2022 (the OBN registration was expired), yet marijuana cultivation continued at the subject location.

¶17 The statutes further demonstrate that criminal prosecution is available for criminal activity as plainly stated in Section 427.6(B)(4). When a grower is cultivating marijuana without a valid OMMA license, he or she is violating Oklahoma's drug laws.

¶18 As shown above, Appellant's argument that Oklahoma's drug laws preclude criminal prosecution in this case is without merit. An interpretation of this section as prohibiting criminal prosecution where a grower operates without a license or with a fraudulent license would be antithetical to the Legislature's intention in enacting statutes specifically dictating the parameters of legally cultivating, producing and selling marijuana (a Schedule I controlled dangerous substance) for medical purposes. Cf. Bosse v. State, 2017 OK CR 10400 P.3d 834

II.

¶19 Appellant maintains in his second proposition that the statutes criminalizing cultivation and possession of marijuana are ambiguous when considered with OMMA regulations. He argues because of this ambiguity, the rule of lenity should apply to preclude his convictions and the trial court erred in failing to apply the rule. We review this claim pursuant to the standard set out in Proposition I.

¶20 "[A] primary rule of statutory construction, the 'rule of lenity,' requires that we construe statutes strictly against the state and liberally in favor of the accused." Newlun v. State, 2015 OK CR 7348 P.3d 209Id., 2015 OK CR 7

¶21 Appellant posits that the enactment of the OMMA somehow supersedes the State's ability to prosecute persons who violate the criminal provisions regarding marijuana contained in the Uniform Controlled Dangerous Substances Act. He claims the language of 63 O.S.2021, § 2-40963 O.S.2021, § 427.6

¶22 The evidence adduced at trial showed Appellant was not in compliance with the requirements of the OMMA. He had no current OBN registration, and he failed to comply with other OMMA regulations concerning security, tagging and reporting. The trial court properly found Appellant was in violation of the OMMA requirements and thus violated the statutory provisions prohibiting the cultivation, possession and sale of marijuana and maintaining a dwelling for facilitating the same. There being no error in the trial court's ruling, Proposition II is denied.

III.

¶23 In Proposition III, Appellant alleges the trial court applied a strict adherence standard in his case which is contrary to the law as well as the spirit of Oklahoma's laws legalizing medical marijuana. Our review is once again as set forth in Proposition I.

¶24 Appellant argues the trial court found him guilty of his crimes because he did "not meet an unarticulated standard of perfection[.]" He claims nothing in the OMMA creates a rigid standard of compliance with its regulations so that a grower must comply perfectly with them in order to lawfully operate. What Appellant fails to acknowledge is the fact that he was operating with a fraudulently obtained OMMA license based upon the straw owner, Helen Corrello, he lacked a current OBN registration, and he failed to even marginally comply with the OMMA regulations for a legal grow operation.

¶25 The evidence presented at trial showed some thirteen compliance failures which are fully set forth in Proposition I and which include those referenced above. Based upon this evidence, the trial court determined that in another case where substantial compliance with the "medical marijuana rules and regulations would offer a legal affirmative defense to criminal prosecution," this was not that case because "[t]here was very little to no compliance by the Defendants in this case in the operation and management in the marijuana grow."

¶26 Based upon this record, the trial court properly determined Appellant's guilt of the crimes charged. Proposition III is denied.

IV.

¶27 In Proposition IV, Appellant repeats his allegation from Proposition I (albeit worded a bit differently) that he cannot be prosecuted criminally because the OMMA provides the only remedies for violations of its provisions. As we fully addressed his similar claim in Proposition I, another analysis of this claim is unwarranted.

¶28 As set forth in Proposition I, medical marijuana growers must have a valid license from the OMMA in order to legally cultivate and sell marijuana. The valid license includes possession of a current OBN registration and the requirement that the seventy-five percent owner be an Oklahoma resident. The evidence presented at trial showed that Appellant met neither of these mandatory provisions and failed to comply with numerous other provisions. 

¶29 The trial court properly exercised criminal jurisdiction over Appellant for his violations of the Uniform Controlled Dangerous Substances Act. Proposition IV is denied.

V.

¶30 Appellant contends in his fifth proposition that the State failed to prove his criminal intent sufficiently to support his convictions. While unclear, Appellant seems to argue that because he thought what he was doing was legal, he cannot be prosecuted criminally, i.e., because he lacked criminal intent. He fails to support this argument with any relevant authority or citation to the record. This failure violates our rules and results in waiver of this issue. See Rule 3.5(A)(5), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18 App. (2026) (an Appellant's brief must contain "[a]n argument, containing the contentions of the appellant, which sets forth all assignments of error, supported by citations to the authorities, statutes and parts of the record," and that "[f]ailure to list an issue pursuant to these requirements constitutes waiver of alleged error."

¶31 Appellant failed to comply with this Court's rules in presenting this proposition. Therefore, Proposition V is denied.

VI.

¶32 In his sixth proposition, Appellant claims the OMMA required the State to pursue administrative procedures against him prior to filing criminal charges. Again, this is the same claim presented in Propositions I and IV, with some different wording. As we fully addressed his similar claim in Propositions I and IV, another analysis of this claim is unwarranted, but we repeat the findings from our analysis of Proposition IV.

¶33 Medical marijuana growers must have a valid license from the OMMA in order to legally cultivate and sell marijuana. The valid license includes possession of a current OBN registration and the requirement that the seventy-five percent owner be an Oklahoma resident. The evidence presented at trial showed that Appellant met neither of these mandatory provisions and failed to comply with numerous others. Moreover, the OMMA regulations clearly state that prosecution for criminal activity is proper, in addition to any administrative procedures or penalties.

¶34 The trial court properly exercised criminal jurisdiction over Appellant for his violations of the Uniform Controlled Dangerous Substances Act. Proposition VI is denied.

VII.

¶35 Proposition VII is another iteration of the claim raised in Proposition III. Accordingly, further analysis is unnecessary. We reiterate our findings from Proposition III.

¶36 Appellant argues the trial court found him guilty of his crimes because he did "not meet an unarticulated standard of perfection[.]" He claims nothing in the OMMA creates a rigid standard of compliance with its regulations so that a grower must comply perfectly with them in order to lawfully operate. What Appellant fails to acknowledge is the fact that he was operating with a fraudulently obtained OMMA license based upon the straw owner, Helen Corrello, he lacked a current OBN registration, and he failed to even marginally comply with the OMMA regulations for a legal grow operation.

¶37 The evidence presented at trial showed some thirteen compliance failures which are fully set forth in Proposition I and which include those referenced above. Based upon this evidence, the trial court determined that in another case where substantial compliance with the "medical marijuana rules and regulations would offer a legal affirmative defense to criminal prosecution," this was not that case because "[t]here was very little to no compliance by the Defendants in this case in the operation and management in the marijuana grow."

¶38 Based upon this record, the trial court properly determined Appellant's guilt of the crimes charged and did not apply some rigid compliance standard to the facts of Appellant's crimes. Proposition VII is denied.

VIII.

¶39 Appellant's eighth proposition is another rendition of the claim he raised in Propositions III and VII. As previously addressed in those propositions, the evidence demonstrated Appellant lacked a valid OMMA license. Thus, his cultivation and possession of copious amounts of marijuana were illegal. The State also presented proof of his multitude of additional violations of the OMMA requirements as set forth in Proposition I.

¶40 Appellant's marijuana grow was illegal because he had an invalid OMMA license. His failure to comply with OMMA regulations regarding the necessity of a current OBN registration and of an Oklahoma resident as a seventy-five percent owner, as well as his numerous other compliance failures warranted the trial court's finding that he was not in substantial compliance with the OMMA. As shown by the evidence set forth in Proposition I, the trial court did not hold Appellant to some rigid standard of compliance with OMMA regulations but found he failed to show any compliance with those regulations. Thus, he is no different that any average citizen who engages in the illegal cultivation or production of controlled dangerous substances.

¶41 The trial court's finding that Appellant was not in substantial compliance with the OMMA regulation is amply supported by the evidence. Proposition VIII is denied.

DECISION

¶42 The Judgment and Sentence of the District Court is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2026), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF CRAIG COUNTY
THE HONORABLE JOSEPH M. GARDNER
ASSOCIATE DISTRICT JUDGE

 
 
 APPEARANCES AT TRIAL
 
 ELTON JENKINS
 124 E. MAIN STREET
 NORMAN, OK 73065
 COUNSEL FOR DEFENDANT
  
 APPEARANCES ON APPEAL
 
 ELTON JENKINS
 124 E. MAIN STREET
 NORMAN, OK 73065
 COUNSEL FOR APPELLANT
 
 
 ERIN L. O'QUIN
 ASST. DISTRICT ATTORNEY
 210 W. DELAWARE AVE.
 VINITA, OK 74301
 COUNSEL FOR STATE
 GENTNER F. DRUMMOND
 ATTORNEY GENERAL
 THEODORE M. PEEPER
 SENIOR ASST. ATTORNEY GENERAL
 313 NE 21ST STREET
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR APPELLEE
 
 

OPINION BY: LUMPKIN, P.J.
MUSSEMAN, V.P.J.: Concur
LEWIS, J.: Concur
HUDSON, J.: Concur
ROWLAND, J.: Concur

FOOTNOTES